UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER BARRON,

               Petitioner,

v.

MATT MACAULEY,

               Respondent.

_____/

Case No. 1:22-cv-107

Honorable Sally J. Berens

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 10.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

**I.      Consent to Magistrate Judge Jurisdiction**

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

## II.    Stay and Abeyance and Timeliness

The Rule 4 preliminary review requires the Court to determine whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions that raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough*, 547 U.S. 198, 209 (2006).

When the Court first reviewed the petition during February 2022, it appeared that the petition might be time-barred. At that time, Petitioner was seeking leave to appeal a trial court order denying a post-judgment collateral attack. Petitioner's application for leave to appeal was filed late; but he had asked the court of appeals to permit the late filing because he was impeded in his efforts to pursue relief by MDOC restrictions imposed in response to the COVID-19 pandemic. If the court of appeals granted that relief, the tolling effect of his collateral motion would continue, and his federal habeas petition would be timely. If the court of appeals denied that relief, any tolling effect of his post-judgment collateral attack would have ended before he filed his petition.

Although neither the Court nor petitioner were aware of it, the day before the Court granted the stay, the court of appeals had dismissed Petitioner's application for leave to appeal as untimely. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court. That court denied leave by order entered June 28, 2022. The supreme court's refusal to afford Petitioner relief eliminated any hope that he might resurrect his efforts to exhaust the unexhausted issues. And, as discussed in detail below, that refusal also fixed a date by which the tolling effect of Petitioner's post-judgment collateral attack ended: August 25, 2021.

Although this Court expected that the state appellate courts' refusal to extend the appeal deadlines would render the petition untimely, that was not the case. The Court's analysis of the timeliness issue in the February 23, 2022, opinion was premised upon a 90-day period to petition the United States Supreme Court for a writ of certiorari after the Michigan Supreme Court denied leave to appeal. At that time, however, because of the COVID-19 pandemic, the Supreme Court had extended the time for filing a petition for writ of certiorari to 150 days. Rule of the Supreme Court of the United States - Miscellaneous Order Addressing the Extension of Filing Deadlines [COVID-19], 334 F.R.D. 801 (2020). Taking into account the tolling of the statute while Petitioner's state-court post-judgment collateral attack was pending ***and*** the 60-day extension, the petition is timely.

### III. Motion to Amend

The Michigan Supreme Court's June 28, 2022 order denying leave to appeal triggered Petitioner's obligation to return to this Court within thirty days to file a motion to amend his petition to include the purportedly newly exhausted issues. Petitioner did not file the motion until October 13, 2022.

The Court's February 23, 2022, order instructed Petitioner as follows:

**IT IS ORDERED** that Petitioner's action is hereby stayed until Petitioner files a motion to amend his petition to include any subsequently exhausted claims. Any such motion must be filed not later than 30 days after a final decision by the Michigan Supreme Court either regarding Petitioner's motion to extend the time to file an appeal or regarding the denial of Petitioner motion for relief from judgment with respect to Petitioner's unexhausted claims and shall include a description of the newly exhausted claims and the dates and substance of decision at each step of state-court review.

**IT IS FURTHER ORDERED** that if Petitioner fails to comply with the deadlines imposed in this order, the Court may dismiss the petition.

(ECF No. 12, PageID.375.) The Court further directed that the habeas action would be administratively closed until Petitioner filed his motion to amend in accordance with the procedures described above. (*Id.*)

Petitioner did not timely file his motion to amend. That failure would warrant denial of the motion to amend. However, even though Petitioner did not comply with the Court's order, he did, within the thirty-day period, write a letter to the Court indicating that the Michigan Supreme Court had denied leave to appeal and inviting the Court to take up his petition once again.

Petitioner's letter does not come close to satisfying his obligations under the Court's order. Indeed, even his present motion to amend the petition does not satisfy the obligations imposed upon him when the Court stayed this action and held it in abeyance. Nonetheless, considering Petitioner's letter and his motion together, and construing both with the liberality properly afforded the filings of *pro se* litigants, the Court will overlook the tardiness of Petitioner's motion and his failure to comply with the filing requirements for his motion and amended habeas petition as set forth in this Court's order granting the stay and in the local rules. Nonetheless, the Court will deny Petitioner's motion to amend because the amendment would be futile.

Motions to amend a habeas corpus petition are governed by Rule 15(a) of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 2242 (application for writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."); *Hodges v. Rose*, 570 F.2d 643, 649 (6th Cir. 1978). As a condition of the stay, the Court directed Petitioner to file a motion to amend upon completion of his efforts to exhaust state court remedies. The Rules and the Supreme Court direct that leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Mayle v. Felix*, 545 U.S. 644 (2005). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against

granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id* at 182. Petitioner's proposed amendments would be futile.

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138–39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). In his petition, Petitioner raised five grounds for habeas relief. As to grounds I, II, and III, Petitioner represented that he had exhausted his state court remedies. As to habeas grounds IV and V, on the other hand, Petitioner acknowledged that he had not raised the issues on direct appeal. Petitioner noted that he had raised those two grounds by way of a motion for relief from judgment. By the time Petitioner filed the petition, the trial court had denied relief. *People v. Barron*, No. 16-2567-FC (Calhoun Cnty. Cir. Ct. Feb. 25, 2021) (ECF No. 19-1, PageID.414–

416). Petitioner had also filed a late application for leave to appeal to the Michigan Court of Appeals.

The court of appeals dismissed the application as outside its jurisdiction because the application was filed too late. *People v. Barron*, No. 360296 (Mich. Ct. App., Feb. 22, 2022) (ECF No. 19-1, PageID.413). Petitioner then sought leave to appeal in the Michigan Supreme Court, which that court denied. *People v. Barron*, No. 164179 (Mich. Jun. 28, 2022) (ECF No. 19-1, PageID.410).

By virtue of these applications for leave to appeal, Petitioner raised habeas grounds IV and V in the state appellate courts, but he did not "fairly present" them. Fair presentation has a substantive component and a procedural component. Regarding substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Picard*, 404 U.S. at 277–78. With regard to procedure, the fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely. *Olson v. Little*, 604 F. App'x 387, 402 (6th Cir. 2015) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989) ("[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor,' . . . does not, for the relevant purpose, constitute 'fair presentation.'")); *see also Ogle v. Ohio Dep't of Rehab. & Corr.*, No. 17-3701, 2018 WL 3244017, at *2 (6th Cir. Feb. 27, 2018); *Stokes v. Scutt*, 527 F. App'x 358, 363–64 (6th Cir. 2013). Because Petitioner presented habeas grounds IV and V to the Michigan Court of Appeals too late, he did not satisfy the procedural component of fair presentation.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Exhaustion is only a problem, however, if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Petitioner is permitted only one motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Mich. Ct. R. 6.502(G)(1). There are limited circumstances where a defendant may file a second motion, Mich. Ct. R. 6.502(G)(2), but they are not applicable here. Moreover, relief is not available where the motion alleges grounds that have been decided against the defendant in a prior proceeding. The trial court ruled against Petitioner on all of the issues he raised. For these reasons, the Court concludes that Petitioner does not have a remedy remaining in the state courts for the grounds he seeks to add to his petition by way of his motion to amend.

If no further state remedy is available to the petitioner, failure to exhaust does not bar consideration of the claims, but the claims are procedurally defaulted. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider "whether (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court . . . enforced the . . . rule so as to bar that claim; and (3) the state procedural default is an adequate and independent state ground properly foreclosing federal habeas review" of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d

337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The last reasoned state-court decision was the Michigan Court of Appeals order dismissing his application for leave to appeal because Petitioner had filed it too late. The trial court denied Petitioner's application for leave to appeal on February 25, 2021. Under Michigan Court Rule 7.205, Petitioner was required to file his application for leave to appeal no later than 6 months after the trial court denied the motion. The Michigan Court of Appeals loses jurisdiction if an application for leave to appeal is filed too late. Petitioner filed his application for leave to appeal on January 10, 2022—almost five months late. In Petitioner's case, he failed to comply with a procedural rule, and the state court relied upon the rule to dismiss his claim.

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). This Court has concluded that the jurisdictional limit of Mich. Ct. R. 7.205 has been firmly established and regularly followed. *See, e.g., Benton v. Horton*, No. 2:20-cv-254, 2021 WL 62084, at *8–9 (W.D. Mich. Jan. 7, 2021) (citing cases).

If a petitioner procedurally defaulted his federal claim in state court, that default bars this Court's consideration of the procedurally defaulted claims unless the petitioner demonstrates either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495

(1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, considering new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

To show cause sufficient to excuse a failure to timely raise claims on appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from complying with the procedural rule. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Although Petitioner did not specifically address the issue of "cause" for the failure to timely file his appeal in the context of procedural default, he did offer a complete explanation for the delay as part of his request for equitable tolling of the statute of limitations. (Pet'r's Mot., Br., and Aff., ECF Nos. 5, 6, 7.) Petitioner's explanation depends significantly on his claim that he had no clue that he was subject to a deadline to file his appeal or what that deadline might be. Petitioner claims that his ignorance was the product of law library and legal writer restrictions put in place because of the COVID-19 pandemic.

Petitioner has been convicted of many felonies and, typically, prisoners with that level of familiarity with the criminal justice system have an understanding of appeal deadlines. But, if Petitioner is credible—and the trial court specifically found that he was not[2]—and he did not know about the appeal deadline, that fact, standing alone is not an "objective factor external to the

---

[2] *People v. Barron*, No. 339508, 2019 WL 2866508, at *3 (Mich. Ct. App. Jul. 2, 2019) (stating "defendant maintains that defense counsel was constitutionally insufficient . . . . The trial court resolved all of these claims by making factual findings contrary to defendant's versions of events after taking testimony at a *Ginther* hearing," and "[t]he trial court found defense counsel was credible and stated that defendant was dishonest with the court.") (footnote omitted).

defense" that might operate as cause. Indeed, the Sixth Circuit has rejected claims that *pro se* status, ignorance of the law or procedural requirements, limited law library time, or even lack of familiarity with the English language are factors "external to the defense" that establish cause for a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

Petitioner offers an almost week-by-week account of the barriers he faced in complying with the application for leave to appeal deadline: he was hampered by COVID-19 pandemic shutdowns, he could not access legal writers, he was in segregation, there were mail delays, and important legal papers were either inaccessible or missing. Nonetheless, Petitioner's account also reveals the following:

- Petitioner prepared his motion for relief from judgment and supporting memorandum on his own, without assistance from a legal writer or counsel, while he was in segregation and in the midst of the COVID-19 pandemic library restrictions;

- Petitioner had his motion for relief from judgment and supporting memorandum in hand for several weeks near the end of his appeal window;

- Petitioner's claims of ignorance—for example, that he "did not even know that a 'sixty-five hundred motion' (6500) as it is called, is called that because it is an actual rule number"—are belied by his motion for relief from judgment and supporting memorandum.

(Pet'r's Aff., ECF No. 7.)

Thus, by late July or early August of 2021, Petitioner had everything he needed to file his appeal except, according to Petitioner, the knowledge that there was a deadline. That ignorance does not establish cause. Moreover, Petitioner waited months after the deadline passed before he filed his application for leave to appeal. Based on Petitioner's own affidavit, therefore, the Court concludes that Petitioner has failed to establish cause for the delay of several months in filing his application for leave to appeal.

Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Moreover, Petitioner has failed to offer any new evidence establishing that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Because Petitioner has not shown cause for his default or manifest injustice, the doctrine of procedural default bars consideration of his new habeas issues. Amendment to add the issues would be futile. Accordingly, the Court denies Petitioner's motion to amend his petition. The Court will address only the first three habeas grounds raised in the petition, as those are the only issues that have been exhausted, but not procedurally defaulted.

## IV.    Factual and Procedural Background

Petitioner Christopher Barron is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. On June 1, 2017, following a three-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted of armed robbery, in violation of Mich. Comp. Laws § 750.529, and first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a. On July 14, 2017, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to consecutive prison terms of 25 to 60 years for home invasion and 50 to 100 years for armed robbery. The MDOC reports Petitioner's earliest release date—the date he would be first eligible for parole—as September 5, 2091, when Petitioner would be 111 years old. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=322902 (last visited Oct. 30, 2022).

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> James and Karen Peterson testified that an unknown man forced his way into their home while armed with what appeared to be a gun, forced James to lay down, repeatedly struck James, and stole James's wallet and a bank envelope with cash.

James and Karen both testified that the man was white, had a height of about 5′9″ or 5′10″, and had a slender build. They testified that he wore a two-toned sweatshirt with a hood and that he had on a white or gray ski mask under his hood. In the Petersons' neighbor's driveway, police officers recovered an improvised mask that had been made from the sleeve of thermal underwear. DNA taken from the improvised mask matched defendant's DNA.

*Barron*, 2019 WL 2866508, at *1.

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals. In the brief filed with the assistance of counsel, Petitioner raised four issues, including the two issues raised as habeas grounds I and II. Petitioner also filed a *pro per* supplemental brief raising two issues, including the issue raised as habeas ground III. Petitioner sought a remand to the trial court to permit him to file a motion for new trial to be supported by an evidentiary hearing regarding the ineffective assistance of his trial counsel. The court of appeals granted that relief.

The trial court heard testimony on Petitioner's motion on July 31, 2018. By order entered August 16, 2018, the trial court denied the motion for new trial.

By opinion issued August 22, 2019, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court. Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court. That court denied leave by order entered February 4, 2020. *People v. Barron*, 937 N.W.2d 656 (Mich. 2020).

Petitioner pursued his motion for relief from judgment as detailed fully in the Court's February 23, 2022, opinion. Amid that effort, Petitioner filed his habeas corpus petition raising five issues, the two unexhausted issues as well as the following issues:

I.    Prosecution committed egregious misconduct by misrepresenting facts in evidence during closing argument exacerbating the prejudicial effect of the sole piece of evidence. The only piece of evidence used to convict Petitioner was DNA found on a thermal sleeve found near the crime scene. There were two sets of DNA found, one known and one unknown. The state alleged that this thermal sleeve was a "mask" despite the victims not being able to

identify it. The state in closing asserted that only Petitioner's DNA was found on the mask.

II.      Trial counsel provided ineffective assistance by failing to investigate possible witnesses, evidence, and testimony concerning alibi and lack of motive. Trial counsel abandoned Petitioner's alibi defense after minimal attempts to contact Estony Cochran (and lack of motive). Not only was counsel's attempt with Estony deficient (as Estony was only unavailable for one month prior to trial) but even minimal investigation would have uncovered other means of presenting alibi and lack of motive testimony. This testimony was complimentary to the defense.

III.     Insufficient evidence. The only piece of evidence linking Petitioner was a thermal sleeve allegedly found near the scene. This sleeve had two holes so the state alleged it was a mask. This sleeve contained two sets of DNA, Petitioner's and an unknown [donor]. However, [the] victims could not positively ID the sleeve, and Petitioner presented evidence that his storage unit was broken into twice AND a large amount of evidence collected, multiple clothing items positively identified as being worn by the robber did not contain Petitioner's DNA.

(Pet., ECF No. 1, PageID.6–9.)

## V.      AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise

contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### A.     Prosecutorial Misconduct

Petitioner contends that the prosecutor's statement during closing argument that "[o]nly Christopher Barron's DNA was on that white mask," (Pet'r's Appeal Br., ECF No. 9-2, PageID.156) (internal quotes omitted), was unsupported by the evidence. Thus, Petitioner argues, the statement constitutes prosecutorial misconduct. Petitioner explains that there was other DNA found on the mask: "[t]he white thermal sleeve contained DNA from two persons, a major donor and a minor donor." (*Id.*, PageID.148.) The forensic scientist was unable to determine the minor donor.

For a petitioner to be entitled to habeas relief based on prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations' . . . ." *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

The Michigan Court of Appeals addressed Petitioner's argument as follows:

In this case, the prosecutor arguably mischaracterized the evidence when she stated in closing that the "only" DNA found on the mask came from defendant. An expert testified at trial that she found DNA from two donors on the mask. She stated that there was one major donor and one minor donor. The minor donor's sample contained insufficient DNA to create a profile. She testified that she determined

17

that defendant's DNA profile matched the major donor's profile. Thus, while there was only one *identifiable* DNA source on the mask, defendant's, there technically were two DNA donors.

Even though the prosecutor may have made a misstatement, it does not appear that the prosecutor deliberately mischaracterized the evidence. She also did not emphasize or repeat her error throughout her arguments. Indeed, after defense counsel emphasized during closing argument that the expert testified that there was DNA from *two* donors on the mask, the prosecutor in rebuttal acknowledged that there was a minor donor. She further invited the jury to review the expert's report and decide for themselves why defendant's DNA was on the thermal sleeve.

The jury had the expert's testimony, the expert's report, the defense's closing statement, and the prosecutor's rebuttal before it. Given these circumstances, the jury clearly was aware that the prosecutor's earlier comment was mistaken. For that reason, the erroneous statement had little if any prejudicial effect. The trial court also instructed the jury that the lawyers' statements and arguments were not evidence and that the jury "should only accept things that the lawyers say that are supported by the evidence." The jury presumably followed that instruction. See *People v. Graves*, 458 Mich. 476, 486; 581 N.W.2d 229 (1998). Additionally, had defense counsel objected to the statement, the trial court could have fashioned an instruction that would have cured the error. Consequently, defendant has not shown that the prosecutor engaged in plain misconduct that prejudiced his trial.

*Barron*, 2019 WL 2866508, at *2.

Petitioner merely repeats the arguments he raised to the court of appeals. He does not explain how the court of appeals' determination of the issue was contrary to, or an unreasonable application of, the clearly established federal law cited above. Moreover, Petitioner offers no basis for the Court to disregard the appellate court's factual finding regarding what the prosecutor or defense counsel argued regarding counsels' arguments. Petitioner has certainly failed to present any clear and convincing evidence to rebut the appellate court's factual determinations. Therefore, the Court is compelled to conclude that the court of appeals' resolution of Petitioner's prosecutorial misconduct claim is entirely consistent with clearly established federal law. Whatever harm was caused by the prosecutor's reference to Petitioner's DNA as the "only" DNA on the mask was sufficiently remedied by defense counsel's identification of the error, the prosecutor's

acknowledgment and clarification during rebuttal, and the trial court's instruction that counsels' arguments were not evidence. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.      Ineffective Assistance of Counsel

Petitioner contends that counsel failed to investigate the alibi evidence available through the testimony of Estony Cochran. Cochran, Petitioner claims, would have testified that Petitioner had no financial motive to commit the offense because he was in a "financially sound situation" and that Petitioner was with her the evening of the home invasion and robbery. (Pet'r's Appeal Br., ECF No. 9-2, PageID.160–161.) Additionally, Petitioner claims that counsel failed to investigate regarding another person, identified as "Zach," who had admitted to Petitioner that he, Zach, had committed the offense. (*Id*., PageID.191.)

> The court of appeals considered Petitioner's claims against the following standard:
>
> "To establish a claim of ineffective assistance of counsel, the defendant must show that 'counsel's representation fell below an objective standard of reasonableness' under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 22, quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694; 104 St. Ct. 2052; 80 L. Ed. 2d 674 (1984). Under the first prong, the defendant must identify those acts or omissions that he or she contends were not the result of reasonable professional judgment. See *Gioglio*, 296 Mich. App. at 22. The reviewing court must then determine whether the identified acts or omissions were outside the wide range of professionally competent assistance under the totality of the circumstances. *Id*.

*Barron*, 2019 WL 2866508, at *3. *Strickland* is *the* clearly established federal law as to ineffective assistance of counsel claims. So, the issue is not whether the court of appeals applied the right standard, but whether the court applied it reasonably.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove that (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced

the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Michigan Court of Appeals resolved all of Petitioner's ineffective assistance claims at the first step of the *Strickland* analysis:

> On appeal, defendant maintains that defense counsel was constitutionally insufficient in several ways: (1) she failed to contact his girlfriend, Esthony Cochran, whom he states could have provided him with an alibi defense and who could have testified about his lack of motive; (2) she failed to investigate "Zach," who purportedly admitted that he was the perpetrator of the crimes at issue; and (3) she prevented defendant from testifying on his own behalf by falsely informing him that the prosecution would present new evidence beyond impeachment if he testified. The trial court resolved all these claims by making factual findings contrary to defendant's versions of events after taking testimony at a *Ginther* hearing.
>
> At the hearing, defense counsel testified that defendant never told her that Cochran could provide an alibi. She also stated that she spoke with Cochran—contrary to defendant's claim—and Cochran told her that she did not recall defendant's whereabouts on the night at issue. Cochran's testimony—that she now recalled that defendant was with her on that night—was not persuasive given her clear credibility issues, and the trial court resolved the disputed testimony against Cochran. The court found his defense counsel credible and found that she had no knowledge that Cochran could have or would have testified as an alibi witness. The court further found that Cochran was not available to testify about defendant's finances because she had made herself unavailable to testify when she disappeared for several

months. The trial court's findings were supported by the record, and we are not left with the definite and firm conviction that it erred. Given these facts, we agree that defense counsel's investigation into Cochran was reasonable, and she cannot be faulted for failing to call Cochran at trial.

The trial court also found that defense counsel had no knowledge about the "random" person named Zach. Indeed, the trial court specifically found defendant and his claim that he provided information about "Zach" not credible. In the absence of such evidence, showing that counsel was aware of Zach's purported involvement with the crime, defense counsel's failure to further investigate Zach cannot be said to be unreasonable.

*Barron*, 2019 WL 2866508, at *3 (footnote omitted).[3]

The court of appeals' determinations turned principally on resolution of factual issues, not legal issues. As explained above, a determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner*, 449 U.S. at 546–547 (1981); *Smith*, 888 F.2d at 407 n.4.

Petitioner does not offer any new evidence—clear and convincing or otherwise—to support his claim that he and Ms. Cochran are credible, and his counsel was not. He simply asks this Court to look at the same evidence relied upon by the court of appeals and reach a different conclusion. That is not the nature of habeas review.

Presuming the correctness of the court of appeals' factual determinations regarding credibility, the court's further determination that counsel's conduct was reasonable necessarily follows. Thus, Petitioner has failed to demonstrate that the court of appeals' rejection of his

---

[3] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

ineffective assistance of counsel claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner is not entitled to habeas relief on this claim.

### C. Insufficient Evidence

Finally, Petitioner contends that the evidence was insufficient to support a jury verdict of guilt beyond a reasonable doubt. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence

grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Petitioner has not cleared that hurdle.

The crux of Petitioner's sufficiency argument is that the prosecutor did not present sufficient evidence with regard to the identity of the robber. The court of appeals disagreed:

> [D]efendant only challenges whether the evidence was sufficient to prove the element of identity, which is an element of every offense. *Yost*, 278 Mich. App. at 356. As such, the prosecutor had to present evidence sufficient to permit the jury to find beyond a reasonable doubt that defendant was the perpetrator of the offenses at issue.
>
> At trial, the prosecution presented evidence concerning the general appearance of the perpetrator of the armed robbery and home invasion. James and Karen both testified that the perpetrator was white, that he was about 5′9″ or 5′10″ tall, and that he had a slender build. They also testified that he wore a two-toned sweatshirt with a hood and a white or gray ski mask. James indicated that the perpetrator's mask was of a thin material. Shortly after the robbery, an officer found a mask that had been improvised from white thermal underwear. He found it in the driveway next to the Petersons' home. The officer testified that the mask was not wet and agreed that it must not have been there very long.
>
> The prosecutor also presented video evidence that showed the suspected perpetrator of the robbery about a block from the Petersons' home just minutes after the robbery. The video evidence showed that the perpetrator was Caucasian, was not wearing a ski mask at that point, and had on a two-tone sweatshirt with a hood. The video evidence was consistent with the Petersons' testimony that the perpetrator was of average height, had a slender build, and wore a two-toned hooded sweatshirt. Officers additionally found—among other things—the sweatshirt, James's wallet, and the BB gun used in the crime, in the vicinity of an auto parts store that was along the path the suspect took. The evidence suggested that the perpetrator of the armed robbery and home invasion fled from the Petersons' home in the direction of the auto parts store and that he discarded evidence along that path. A reasonable jury could infer that the mask was one of those items, which explains why it was found in the neighboring driveway along the perpetrator's path of flight shortly after the robbery and home invasion.
>
> Importantly, the prosecution further presented evidence that DNA from two donors was found on the mask. The evidence showed that defendant was the major donor. The presence of DNA from a second donor did not preclude the permissible inference that defendant was the major donor because he wore the mask. The prosecutor did not have to negate every reasonable theory consistent with defendant's innocence. See *People v. Hardiman*, 466 Mich. 417, 423–424; 646 N.W.2d 158 (2002). Viewing the evidence in the light most favorable to the prosecution, as this Court must do, *People v. Wolfe*, 440 Mich. 508, 514–515; 489

23

N.W.2d 748 (1992), amended 441 Mich. 1201 (1992), the jury could reasonably conclude that the reason defendant's DNA was found on the mask was because he wore the mask over his face and that he did so during the commission of the offenses at issue. Therefore, the prosecutor presented sufficient evidence to establish defendant's identity as the perpetrator of the armed robbery and home invasion.

*Barron*, 2019 WL 2866508, at *5-6 (footnote omitted).

The court of appeals' analysis identifies many inferences from the evidence admitted. *Jackson* requires that the inferences urged must be "reasonable." The Supreme Court separated reasonable inferences from bare speculation in *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Based on the *Coleman* Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is not a particularly onerous burden. The Court went so far as to say, "the only question under *Jackson* is whether [a] finding [is] so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Petitioner does not attack the court of appeals' analysis as speculative or irrational; instead, he simply combs the record for evidence that favors him and asks this Court to reweigh the evidence and conclude that the prosecutor's evidence does not suffice. Petitioner's effort turns the *Jackson* standard on its head. *Jackson* does not require the habeas court to sift through the evidence and place it on one side of the scale or the other for the purpose of assessing whether the jurors' estimation of the balance is correct. This Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt considering that evidence. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences are rational. Petitioner's invitation to focus on the evidence and inferences that favor him is inappropriate.

Considering the Michigan Court of Appeals' sufficiency determination against the *Jackson* standard, the Court concludes that Petitioner has failed to demonstrate that the determination is contrary to, or an unreasonable application of, clearly established federal law. Therefore, he is not entitled to habeas relief.

## VI.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason . . . could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in

violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will deny Petitioner's motion to amend the complaint to add previously unexhausted issues to his petition because the amendment would be futile. The Court will also enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   November 15, 2022               /s/ Sally J. Berens
                                         SALLY J. BERENS
                                         U.S. Magistrate Judge

26